UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )  )  v.  )  )  GUADALUPE GALAVIZ  ) | Case No. 1:12-cr-00125-CKK |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
FOR A *SMITH* DEPARTURE AND FOR FIRST STEP ACT ELIGIBILITY**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this Opposition to defendant's Motion for a *Smith* Departure and for First Step Act Eligibility (ECF No. 394).

In his motion, defendant requests that the Court reduce his sentence by up to six months pursuant to *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994). Alternatively, defendant asks the Court to order the Bureau of Prisons (BOP) to change aspects of the execution of defendant's sentence. For the reasons set forth below, the Court should summarily deny the portion of defendant's motion that seeks a *Smith* departure and deny without prejudice the part of his motion that challenges the manner of the execution of his sentence.

**RELEVANT FACTUAL BACKGROUND**

On November 6, 2013, defendant pled guilty, pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement (ECF No. 229), to one count each of Conspiracy to Distribute and Possess with Intent to Distribute One Kilogram or More of Heroin in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A)(i), and -846, and Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or More of Cocaine Powder in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(B)(ii), and -846.

In the plea agreement, defendant and the Government agreed that under the U.S. Sentencing Guidelines ("Guidelines"), a sentencing enhancement would apply for defendant's role in the offense as an organizer or leader of criminal activity that involved five or more participants (ECF No. 229 at 4). Defendant and the Government further agreed that a sentence of 15 years' incarceration to be followed by five years of supervised release was appropriate. *Id.* at 2. Defendant "waive[d] any right to challenge the conviction or sentence or otherwise attempt to modify or change the sentence or the manner in which it was determined in any collateral attack." *Id.* at 8.

During the plea hearing, defendant stated that he was born in Mexico (11/6/13 Tr. 18).[1] The following colloquy occurred:

> THE COURT: If you're not a U.S. citizen, do you understand that conviction of the offense can result in your being deported, excluded from the United States or denied citizenship under our immigration laws? Do you understand that?
>
> THE DEFENDANT: I do.
>
> THE COURT: And is that something that you had a discussion about with [defense counsel] Mr. Grimm?
>
> MR. GRIMM: We did a lot of research. There was a tremendous amount of background in that area, and based on what she knows about Mr. Galaviz, that is the permanent resident of –
>
> ***
>
> THE COURT: So he's a U.S. permanent resident?
>
> MR. GRIMM: Yes.
>
> THE COURT: Okay.
>
> MR. GRIMM: And Ms. Aguiniga – and, actually, I consulted an immigration law firm as well, is that he would not be deported.

---

[1] References (11/6/13 Tr.) are to the transcript of the plea hearing. References (2/6/14 Tr.) are to the transcript of the sentencing proceedings. Upon request, the Government will provide the Court with a copy of referenced court transcripts.

>THE COURT: Okay. But you understand that I have to let you know? I can't guarantee you that this isn't going to happen, so I want you to just know that upfront. Immigration laws, you know, at one point they sometimes change, but I want you to understand you're not illegally here, so that puts you in a different position if you've got a permanent residence, a green card. But I just want to say there may be consequences to your status, just so you understand that. Do you understand that?
>
>THE DEFENDANT: I do.

*Id.* at 18-19.

The Court discussed the rights defendant was waiving pursuant to the plea agreement, including the right to challenge his sentence through a collateral attack. *Id.* at 32-34. The Court described specific types of collateral attacks that were excluded from that waiver. *Id.* Defendant indicated that he understood. *Id.* The waiver provision did not specifically allow for the right to seek a sentence reduction pursuant to *United States v. Smith*, 27 F.3d at 649. *Id.*

In a Memorandum in Aid of Sentencing filed on January 24, 2014 (ECF No. 253), defendant asked the Court to sentence him consistently with the plea agreement. *Id.* at 2, 3, 7. Defendant stated that he was a Mexican citizen and a permanent resident and that he did not believe he would be deported. *Id.* at 3. He wrote that, as a result, he was not asking defense counsel to seek a downward departure under *Smith*. *Id.*

The Presentence Investigation Report ("PSR") stated:

>Records of the Bureau of Immigration and Customs Enforcement (ICE) confirm the defendant is legally residing in the United States as a permanent resident and may live and work in the United States. He may[,] however, be amenable to removal proceedings for violation of the Immigration Act as a result of his conviction for a felony offense.

(PSR ¶ 103).

The PSR noted:

>Present law requires that an alien convicted of a federal offense who is sentenced to imprisonment serve the entire sentence (minus

3

> statutory good time and time served) before being deported. The defendant's status as an alien precludes him from eligibility for participation in certain programs, or from other considerations as an inmate in the U.S. Bureau of Prisons while serving the sentence for the instant offense.

*Id.* at ¶ 171.

The PSR continued, "The defendant's status as a deportable alien may warrant a downward departure from the guidelines." *Id.* at ¶ 172. Citing *Smith*, a Probation Officer wrote, "The DC Circuit has ruled that a downward departure may be appropriate if the defendant's status as a deportable alien is likely to cause fortuitous increase in the severity of his confinement." *Id.* at ¶ 173. The PSR indicated that defendant and defense counsel had reviewed the PSR and noted language that they believed to be inaccurate. *Id.* at 29. Paragraph 172 was revised for clarification to the above-quoted language, though it is not clear whether that revision was made at the defense's request. *Id.* at 29-30.

The Court held sentencing proceedings on February 6, 2014. Consistent with the plea agreement, the Court found that defendant was a leader and organizer of the conspiracy and would be eligible for a sentencing enhancement on that basis under Section 3B1.1(a) of the Guidelines (2/6/14 Tr. 69).[2] The Court sentenced defendant to concurrent terms of 180 months (15 years) of incarceration, to be followed by a total term of 60 months (five years) of supervised release. *Id.* at 89. The Court also ordered defendant to forfeit $726,000 (2/6/14 Tr. 90-91; ECF No. 265). At the sentencing proceedings, defense counsel stated:

> I have been back and forth with Mr. Galaviz on the issues of deportation for awhile [sic] and I've advised him how aggressive Homeland Security and Customs and Border Patrol are these days. He's been a permanent resident for 13 years. He does not believe he's going to be deported. So if the Court were to consider the credit he would get or the suggestion by the Court of Appeals in *Smith* that

---

[2] At the sentencing proceedings, defendant objected to the idea that he was a leader or organizer of the conspiracy, but the Court found that he was, based on the facts of the case (2/6/14 Tr. 65-69, 81).

> he's going to be deported, he gets deprived of participating in programs at the facility he's going to. So Mr. Galaviz has not asked me to ask the Court for a reduction under *Smith*.

(2/6/14 Tr. 82; ECF #394 at 32).

The Court addressed defendant and said that by committing serious crimes, he

> obviously was taking some risk with your legal status in the United States as a permanent resident. That is obviously not something that is good. I hope that you're correct and that this isn't going to affect it from your perspective, but you have taken a risk in terms of potentially jeopardizing it.

(2/6/14 Tr. 87-88). The Court continued, "If you are deported, you shall comply with the Bureau of Immigration and Customs Enforcement [sic] immigration process." *Id.* at 90. The Court further warned, "If requested, the probation office shall release the Presentence Investigation Report and/or Judgment and Commitment Order to the Bureau of Immigration and Customs Enforcement." *Id.*

Defense counsel indicated that defendant would likely want the Court to recommend that he be incarcerated in Three Rivers Correctional Institute in Texas, but that counsel would follow up with the Court once he had confirmed whether the Residential Drug Abuse Program (RDAP), in which defendant was interested, was available at that prison. *Id.* at 82-83. The Court instructed defense counsel to let the Court know which prison defendant wanted the Court to recommend for his placement. *Id.* at Tr. 84.

Defendant did not appeal his conviction or seek to withdraw his guilty plea, and he is currently serving his sentence.

On December 8, 2014, defendant filed a motion, pursuant to 18 U.S.C. § 3582(c)(2), seeking a reduction of his sentence in light of reductions in the Guidelines relating to drug offenses (ECF No. 288). On June 17, 2015, the Government filed an opposition (ECF No. 310). This Court

denied defendant's motion. The Court held that while defendant was eligible for a reduction in his sentence to a term between 168 and 210 months pursuant to Amendment 782 of the Guidelines, it would not exercise its discretion to reduce his sentence, largely based on defendant's "prominent role" in a conspiracy responsible for trafficking large amounts of high-purity heroin and powder cocaine. *United States v. Galaviz*, 145 F.Supp.3d 14 (D.D.C. 2015), *order vacated and reentered*, 183 F.Supp.3d 103 (D.D.C. 2016).[3] The Court of Appeals affirmed this Court's order. *United States v. Galaviz*, 892 F.3d 378 (D.C. Cir. 2018).

On June 12, 2017, defendant filed a motion seeking to alter or amendment the judgment from 180 months' imprisonment to 120 months' imprisonment (ECF No. 365). This Court denied that motion. *United States v. Galaviz*, 282 F.Supp.3d 87 (D.D.C. 2017).

On August 29, 2022, defendant filed a letter that the Court treated as a motion, indicating that he intended to file a motion for reconsideration of his motion for modification or reduction of his sentence as well as a new motion seeking a reduction of sentence (ECF No. 391). The Court denied his request to file a motion for reconsideration, but allowed defendant to file a motion seeking a reduction of sentence on grounds different than those raised in the prior motion (ECF No. 392).

On September 30, 2022, defendant filed the instant *pro se* motion seeking a departure of up to six months pursuant to 18 U.S.C. § 3553(b) and *Smith* or, alternatively, changes to the manner of execution of his sentence (ECF No. 394).

---

[3] Although, in his written plea agreement, defendant waived his right to attempt to modify his sentence through a motion brought under 18 U.S.C. § 3582(c)(2) (ECF No. 229 at 8), during the plea proceedings, the Court informed defendant that he retained the right to bring such a motion. *United States v. Galaviz*, 130 F.Supp.3d 197, 201 (D.D.C. 2015) (citing 11/6/13 Tr. 32-33). Thus, this Court found that defendant had not waived the right to bring such a motion. *United States v. Galaviz*, 130 F.Supp. at 201.

Defendant is currently serving his sentence at Coleman Low Correctional Institution in Sumterville, Florida. His projected release date, according to BOP's website, is April 28, 2025.

# LEGAL ARGUMENT

Defendant's primary request is that the Court grant a *Smith* departure and reduce his sentence by up to six months because, he claims, based on his status as a deportable alien, his sentence is more severe than it otherwise would be. Alternatively, defendant asks the Court to order that BOP alter the manner of execution of his sentence. Specifically, he asks the Court to order BOP to grant him First Step Act eligibility, home detention eligibility under the First Step Act, and First Step Act time credits, and to allow him to participate in RDAP. For the reasons set forth below, the Court should summarily deny defendant's request for a *Smith* departure and deny, without prejudice, his request that BOP alter the manner of execution of his sentence.

I. Defendant Asked the Sentencing Court Not to Grant a *Smith* Departure and Waived His Right to Now Seek One.

In *Smith*, the Court of Appeals held that "a sentencing court may depart below the range indicated by the Guidelines where the defendant, solely because he is a deportable alien, faces the prospect of objectively more severe prison conditions than he would otherwise." *Smith*, 27 F.3d at 650. In that case, the defendant, as a result of being a deportable alien, was prohibited from serving any portion of his sentence in a minimum-security prison. *Id.* at 651. In addition, he would likely be ineligible for the benefits of 18 U.S.C. § 3624(c), which meant he would not have the opportunity to spend the last 10% of his sentence in conditions that would provide a reasonable opportunity to prepare for re-entry into the community. *Id.* at 650-51.

7

While the Court stated that a departure on the basis of these circumstances was not prohibited, the Court made clear that it was not "suggest[ing] that a departure is in order whenever a factor unrelated to a prisoner's just deserts may affect the severity of his confinement." *Id.* at 655. The Court noted, "[A]s the defendant's status as a deportable alien is by no means necessarily unrelated to his just deserts, even a court confident that the status will lead to worse conditions should depart only when persuaded that the greater severity is undeserved." *Id.* The Court made clear its expectation that such departures would be "highly infrequent." *Id.*

First and foremost, in his Rule 11(c)(1)(C) plea agreement, defendant agreed to the exact sentence he received and uncategorically waived the right to bring the instant motion. *See, e.g., United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009) (enforcing waiver provision in plea agreement). When, in a Rule 11(c)(1)(C) plea agreement, the Government and defendant have agreed that a specific sentence is appropriate, and the Court accepts the plea agreement, that sentencing "recommendation or request binds the court." Fed.R.Crim.P. 11(c)(1)(C); *see United States v. Oliver*, 589 F.Supp.2d 39, 40 (D.D.C. 2008) (stating that a Rule 11(c)(1)(C) plea agreement "is a contract signed by the parties" and that when a court accepts this type of agreement, it "has no power to modify the sentence under the Federal Rules of Criminal Procedure").

The waiver provision in defendant's plea agreement is enforceable because, in that agreement, defendant expressly waived any right to bring a collateral attack challenging the conviction or sentence or to otherwise attempt to modify or change the sentence or the manner in which it was determined. During the plea allocution, he verbally indicated that he understood that he was waiving these rights. Further, during the plea hearing, the Court warned that as a result of defendant's conviction, he could be deported or excluded from the United States or denied

citizenship. Defendant indicated that he understood. Although the defense noted its belief that defendant would not be deported, the Court stated that there was no guarantee that that was the case. Defendant again stated that he understood.

Moreover, defendant also waived his claim by twice informing the Court -- once in his Memorandum in Aid of Sentencing and once at the sentencing proceedings -- that he did not want the Court to grant a *Smith* departure. Having previously encouraged the Court to forgo any *Smith* departure at sentencing, defendant has waived any claim that the Court should now reduce his sentence in accordance with *Smith*. *See United States v. Long,* 997 F.3d 342, 353 (D.C. Cir. 2021) ("'Invited error occurs when defense counsel induces the error' through their litigation conduct before the district court." (quoting *United States v. Lawrence*, 662 F.3d 551, 557 (D.C. Cir. 2011))).

Defendant now avers that the waiver of his right to seek a *Smith* departure through a collateral attack was not made knowingly, intelligently, and voluntarily (ECF No. 394 at 8).[4] He acknowledges that at sentencing, he specifically chose not to ask for a *Smith* departure, but claims that he had "no[] knowledge he will get deprived of participating in benefiting of programs at the B.O.P. facility." *Id.* at 10. The record, however, belies defendant's claim. After all, the PSR, which defendant and defense counsel reviewed and edited prior to the sentencing proceedings specifically stated, "The defendant's status as an alien precludes him from eligibility for participation in certain programs, or from other considerations as an inmate in the U.S. Bureau of Prisons while serving the sentence for the instant offense." Defendant supplies no authority or other reason why the Court

---

[4] It is not clear whether defendant is claiming that his waiver of his right to seek a *Smith* departure through a collateral attack was not made knowingly, intelligently, and voluntarily, or whether, in his motion, he is simply summarizing the argument he made in his December 8, 2014 motion as to the waiver of his right to seek a sentence reduction under 18 U.S.C. § 3582(c)(2). The Government has given defendant the benefit of the doubt and addressed his possible waiver argument as to the *Smith* departure claim.

should not deny his motion on the basis of his waiver. *See United States v. Iesajaco-Diaz*, 2022 WL 17587857, *1 (D.C. Cir. Dec. 13, 2022) (holding that plea agreement language waiving the right to appeal the sentence, including the term of imprisonment and the manner of determination of the sentence, "squarely foreclose[d]" the defendant's claim that his sentence was flawed because the court purportedly failed to consider a *Smith* departure).

This case closely mirrors the circumstances in *United States v. Satizabal*, 190 F.Supp.3d 183 (D.D.C. 2016). In that case, the defendant pled guilty to conspiracy to distribute cocaine, pursuant to a Rule 11(c)(1)(C) plea agreement. *Id.* at 184. Following sentencing, he filed a *pro se* motion in which he asked the Court to reduce his sentence by up to six months on the basis of *Smith*. *Id.* Satizabal "was aware at the time of sentencing that his status as a deportable alien could affect his sentence," and he had "expressly waived the opportunity to ask the Court for a reduction on that ground." *Id.* at 185. "Satizabal explicitly agreed that he would not seek a *Smith* reduction." *Id.* The Court concluded, "Having agreed not to seek this reduction, Satizabal can hardly now demand it." *Id.* Similarly, there is no merit to defendant's present request for a *Smith* departure, given that he clearly indicated at sentencing that he had chosen not to request such a departure and that he waived the right to raise this type of collateral attack.

In any event, defendant's argument also fails on the merits. There are very limited circumstances in which a federal court can reduce or modify a criminal defendant's sentence pursuant to 18 U.S.C. § 3582(c). *See Dillon v. United States*, 560 U.S. 817, 824 (2010) ("A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances" (citing 18 U.S.C. § 3582(b); internal quotations and brackets omitted)). A district court may not modify a term of imprisonment once it has been imposed unless the case falls within one of three exceptions set

forth at 18 U.S.C. § 3582(c) and described below. *See United States v. Morris*, 116 F.3d 501, 504 (D.C. Cir. 1997); *Douglas v. United States*, 306 F. Supp.2d 16, 19 (D.D.C. 2004). Defendant argues that his situation is a "rare circumstance" that merits a reduction under 18 U.S.C. § 3582(c) (ECF No. 394 at 7). He does not state, however, which exception he believes applies, and, indeed, none do.

The first exception, found in § 3582(c)(1)(A), allows for compassionate release. Under this exception, the Court may reduce a defendant's sentence "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," if the requested reduction is consistent with applicable policy statements issued by the Sentencing Commission and if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court finds "that extraordinary and compelling reasons warrant such a reduction." BOP has not filed a motion seeking a reduction of defendant's sentence. Nor has defendant established that he has exhausted all administrative rights to appeal BOP's failure to bring a motion on defendant's behalf or that he made such a request of the warden of his facility more than 30 days ago.

Even had defendant made such a request of BOP, he has not even argued, let alone demonstrated, that the requested reduction is consistent with applicable Sentencing Commission policy statements and section 3553(a) factors and that extraordinary and compelling reasons warrant such a reduction. In fact, there is no reason to believe that the hardships defendant cites are experienced on a "highly infrequent" basis or are so severe that they constitute "extraordinary and compelling reasons" for early release. *Cf. United States v. Jenkins*, 50 F.4th 1185, 1200 (D.C.

Cir. 2022) ("we conclude that legal errors at sentencing—including those established by the retroactive application of intervening judicial decisions—cannot support a grant of compassionate release.").

Further, because imposition of a *Smith* departure is a discretionary decision, the failure to impose a *Smith* departure at sentencing does not constitute an extraordinary and compelling reason for early release. *Cf. United States v. Olivares*, 473 F.3d 1224, 1230–31 (D.C. Cir. 2006) (affirming sentence that did not grant *Smith* departure per se but imposed sentence district court judge deemed appropriate because the district court recognized its authority to depart under *Smith* and decision not to do so is unreviewable except for reasonableness).

Defendant alleges that his sentence is unduly severe because, based on his status as a deportable alien, BOP has determined that he is ineligible to receive benefits under 18 U.S.C. § 3624(c)(1) and the First Step Act, including the ability to earn First Step Act time credits toward a reduction of his sentence (ECF No. 394 at 6-7). Yet the Court was aware of this at the time of defendant's sentencing. Indeed, 18 U.S.C. § 3624(c)(1) states, "The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Those conditions can include home confinement. 18 U.S.C. § 3624(c)(2). As the *Smith* Court stated, based on a BOP regulation, deportable aliens are nearly always ineligible for these benefits. *Smith*, 27 F.3d at 650-51.

Moreover, § 3624(c)(1) does not mandate that anyone, including U.S. citizen prisoners, receive benefits under this provision. Instead, BOP is to provide these benefits only if practicable and has the discretion to deny less restrictive confinement to any prisoner. Thus, rather than facing

a "rare circumstance" (ECF No. 394 at 7), defendant's treatment is consistent with BOP regulations and typical. *See United States v. Lopez-Salas*, 266 F.3d 842, 848, 850-51 (8th Cir. 2001) ("Being categorically excluded from receiving early release is not, by itself, an unusual or atypical factor," and in light of the defendants' nine- and 14-year sentences, the fact that the defendants "were ineligible for half-way house assignment for the last six months because the BOP considers deportable aliens security risks is not, alone, an exceptional increase in the severity of the conditions of confinement"); *United States v. Bahena*, 223 F.3d 797, 807 (8th Cir. 2000) ("Conviction of trafficking in a large amount of drugs . . . makes it unlikely that defendant would have been placed in a minimum-security facility [even if he were a citizen.]"). *Contrast with United States v. Ferreria*, 239 F.Supp.2d 849 (E.D. Wisc. 2002) (sentencing court granted downward departure based on the defendant's status as deportable alien and his unusual circumstances; defendant played minor role in drug conspiracy, had lawfully resided and been gainfully employed in the U.S. for 25 years, since the age of 15, and would be separated from his family upon deportation).

As to First Step Act benefits, defendant's primary argument is that BOP improperly found him to be ineligible based on his deportability (ECF No. 394 at 6-8, 12-14). That argument is addressed *infra* in Section II. However, to the extent that defendant argues that his status as a deportable alien has resulted in ineligibility for First Step Act benefits and has, therefore, made his sentence unduly severe, that argument is meritless. That is because defendant is ineligible for First Step Act benefits on a basis completely independent of his deportability. 18 U.S.C. § 3632(4) states that a prisoner is ineligible to receive First Step Act time credits if he is serving a sentence for a conviction under "[s]ubparagraph (A)(i) . . . of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(i))" "relating to manufacturing, distributing, dispensing, or possessing with

intent to manufacture, distribute, dispense, or knowingly importing or exporting, a mixture or substance containing a detectable amount of heroin if the sentencing court finds that the offender was an organizer, leader, manager, or supervisor of others in the offense, as determined under the guidelines promulgated by the United States Sentencing Commission." 18 U.S.C. § 3632(4)(D)(lxv). As defendant has been convicted of this crime, he is ineligible for First Step Act benefits, and this ineligibility -- based on something other than his deportability -- is not a valid justification for a *Smith* departure. Defendant thus has not demonstrated that a sentence modification under the first exception, in § 3582(c)(1)(A), is appropriate.[5]

The second exception, found in § 3582(c)(1)(B), allows the Court to modify a defendant's term of imprisonment "to the extent otherwise expressly permitted by statute or by Rule 35." Finally, the third exception, found in § 3582(c)(2), permits a defendant's sentence to be modified in situations where the sentencing range was subsequently lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o).

None of the enumerated exceptions in § 3582(c) apply in this case. Accordingly, this Court lacks authority to grant defendant's request for a sentence reduction of up to six months, and his motion for a *Smith* departure should be denied. *See United States v. Awoleye*, 2018 WL 10397033,

---

[5] Defendant alleges that the "conditions of living for [a] non-citizen alien immigrant" in the prison where he is housed are "bizarre, difficult and very tourturous" [sic] and that the prison does not provide adequate medical care for non-citizens (ECF No. 394 at 6). This claim may be part of his argument that he is facing more severe prison conditions than he would if he were not a deportable alien. A claim about problematic prison conditions, however, is not properly brought in the instant motion. The appropriate way to raise such a claim is for defendant to file a civil suit against his current jailer in his district of confinement. *See, e.g., United States v. Folse*, 2016 WL 3996386, at *15 (D.N.M. June 15, 2016) ("The general rule is that a defendant must file a separate civil action to address his conditions of confinement."); *United States v. Luong*, 2009 WL 2852111, at *1 (E.D. Cal. Sept. 2, 2009); *United States v. Wells*, 2007 WL 3025082, at *2 (W.D. Ky. Oct. 15, 2007). When a claim challenging conditions of confinement is erroneously filed in a defendant's criminal case, the trial court should deny the claim. *See, e.g., United States v. Banks*, 422 F. App'x 137, 138 n.1 (3d Cir. 2011) (per curiam) ("We agree with the District Court that a motion filed in his criminal case was not the proper vehicle for raising the claims about prison conditions contained in that motion."); *United States v. Garcia*, 470 F.3d 1001, 1003 (10th Cir. 2006).

at *2 (D.D.C. 2018) (denying request for *Smith* departure because none of the three exceptions described in 18 U.S.C. § 3582(c) applied).[6]

II. Defendant's Claims About the Execution of His Sentence Are Not Properly Raised in an 18 U.S.C. § 3582 Motion

Defendant raises complaints about BOP's determinations regarding his participation in certain programming and his eligibility for time credits. Specifically, he asserts that BOP should have found him eligible for benefits under the First Step Act. He asks the Court to order BOP to grant him First Step Act eligibility, home detention eligibility under the First Step Act, and First Step Act time credits for courses he has completed (ECF No. 394 at 14-15). He also contends that BOP should allow him to participate in the RDAP and asks the Court to order BOP to do so. *Id.* at 14. In essence, in this portion of his motion, defendant is challenging the execution, or serving of, his sentence.

Defendant must raise these challenges pursuant to 28 U.S.C. § 2241. *See, e.g., United States v. Stewart*, 675 F.Supp.2d 86, 88 (D.D.C. 2009) (claim that BOP should allow participation in RDAP properly brought in petition for writ of habeas corpus); *United States v. Edwards*, 2022 WL 2866703, at *6 (D.D.C. July 21, 2022) ("an inmate wishing to challenge a BOP decision regarding time credit must bring that challenge via a habeas petition under 28 U.S.C. § 2241") (citing *United States v. Lawson*, 2022 WL 2663887, at *12, n.26 (D.D.C. July 11, 2022) (citing *Edwards v. Balisok*, 520 U.S. 641, 643-44 (1997) ("[T]he sole remedy in federal court for a

---

[6] Defendant also asks the Court to reduce his sentence under 18 U.S.C. § 3142(c) (ECF No. 394 at 7), but that statute is inapplicable, as it relates to release of a defendant pending trial.

prisoner seeking restoration of good-time credits is a writ of habeas corpus") (additional citations omitted)).[7]

Moreover, defendant must bring such an action in the district of his confinement, not the judicial district where he was sentenced. *Stewart*, 675 F.Supp.2d at 88; *Edwards*, 2022 WL 2866703, at *6. More specifically, defendant's requests for the Court to issue orders to BOP cannot be raised in the District of Columbia because, given that defendant is incarcerated in Florida, this Court lacks personal jurisdiction over the "person having custody of the person detained," as required by 28 U.S.C. § 2243. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (proper respondent in a federal habeas action challenging present physical custody is the warden of the facility where the petitioner is held); *Fletcher v. Reilly*, 433 F.3d 867, 875 (D.C. Cir. 2006) (same); *In re Tripati*, 836 F.2d 1406, 1407 (D.C. Cir. 1988) (same); *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 810-11 (D.C. Cir. 1988) (same); *Guerra v. Meese*, 786 F.2d 414, 415 (D.C. Cir. 1986) (same).

Accordingly, insofar as defendant challenges BOP's action with respect to the execution of his sentence, this Court should dismiss his claim without prejudice or transfer his request to the U.S. District Court for the Middle District of Florida (the judicial district where Coleman Low Correctional Institution is located), after giving him notice of the proposed action and an opportunity to be heard. *See Chatman-Bey*, 864 F.2d at 814 (prior to transfer, the court should provide a habeas petitioner "with notice of the District Court's anticipated action and an opportunity to set forth reasons why the case can (and should) properly be heard in this jurisdiction").

---

[7] On December 23, 2022, defendant filed with the Court a letter addressed to BOP relating to his assertion that BOP improperly found him to be ineligible for First Step Act benefits based on his deportability (ECF No. 400). Attached to that letter was an appeal of the ineligibility decision that defendant submitted to BOP on October 31, 2022. *Id.* at 1, 5. Defendant wrote that as of December 19, 2022, BOP had not responded to the appeal. *Id.* at 1. On January 9, 2023, this Court granted defendant leave to file. *Id.*

**CONCLUSION**

For the reasons stated herein, defendant's Motion for a *Smith* Departure and for First Step Act Eligibility should be **DENIED IN PART;** and **DENIED, WITHOUT PREJUDICE, IN PART**.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

PETER S. SMITH
Assistant United States Attorney
Deputy Chief, Special Proceedings Division

 /s/ Tracy Suhr
TRACY SUHR
Assistant United States Attorney
Special Proceedings Division
NY Bar Member
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-6898
Tracy.Suhr@usdoj.gov

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that, this 8th day of March, 2023, I caused a copy of the foregoing Opposition to be served via first class mail, postage prepaid, on:

Guadalupe Galaviz
Fed. Reg. No. 14632-379
FCI Coleman Low
Federal Correctional Institution
P.O. Box 1031
Coleman, FL 33521

*/s/ Tracy Suhr*
Assistant United States Attorney